IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID HEBERT,

                 Plaintiff,

  v.

SHELLEY NITZ and ERIC SPECKHART,[1]

                 Defendants.

OPINION & ORDER

14-cv-372-jdp

---

Pro se plaintiff David Hebert, an inmate at the Stanley Correctional Institution, brings Eighth Amendment and state-law negligence claims against defendant prison officials Nurse Shelley Nitz and Captain Eric Speckhart. Plaintiff alleges that after he had surgery for a broken wrist, they refused to give him his prescribed Vicodin to alleviate the severe pain he suffered.

Defendants have filed a motion for summary judgment, and plaintiff has filed motions related to discovery as well as a motion for the court's assistance in recruiting counsel. After considering these filings, I conclude that there are disputed issues of material fact precluding resolution of the claim on summary judgment, and that it is appropriate to recruit counsel to assist plaintiff with the complex medical issues raised in the case. Accordingly, I will deny defendants' motion for summary judgment and grant plaintiff's motion for counsel. I will deny the remainder of plaintiff's motions, with the exception of a motion to compel a new response to an interrogatory that defendants previously inappropriately answered.

---

[1] I have amended the caption to include defendants' full names.

FINDINGS OF FACT

The following facts are drawn from the parties' proposed findings of fact and supporting evidentiary materials, and are undisputed unless noted otherwise.

Plaintiff David Hebert is in inmate who has been incarcerated at Stanley Correctional Institution ("SCI") since 2007. During the times relevant to this case, defendant Shelley Nitz was as a "Nurse Clinician 2" at SCI. Defendant Eric Speckhart was a "Supervising Officer 2 (Captain)" at SCI.

Plaintiff broke his right wrist playing softball on May 29, 2011. He was sent to Our Lady of Victory Hospital and then to Marshfield Clinic. A doctor set plaintiff's broken bone. Plaintiff's wrist was placed in a cast and he was given a sling and a prescription for Vicodin, a narcotic medication used for short-term relief of moderate to severe pain. He was returned to SCI.

On May 31, 2011, plaintiff reported that he heard his wrist "pop" and was experiencing increased pain. Dr. Hannula (a non-defendant) split the cast and removed a section of it to alleviate plaintiff's pain. Plaintiff was seen at Marshfield Clinic on June 6, 2011, for a scheduled follow-up. Two days later, doctors performed an "open reduction internal fixation surgery" on plaintiff. As part of the procedure, plaintiff was given a nerve block to temporarily numb some of his pain. Plaintiff was again prescribed Vicodin to take on an "as-needed" basis. Prison staff controlled plaintiff's access to the Vicodin.

Plaintiff returned to SCI that night, at about 9:45 p.m., plaintiff was placed in the Health Services Unit (HSU), pursuant to the hospital's recommendation that he be monitored overnight because of the nerve block he was given. A nurse gave him a dose of Vicodin and an ice bag at about 9:50 p.m.

Defendant Nurse Nitz saw plaintiff at 10:00 p.m. Plaintiff said that he was not in pain, and that his arm was still numb but that he could move his fingers. Nitz gave plaintiff provided an ice bag and extra pillow. Nitz received orders from Dr. Hannula to give plaintiff one or two tablets of Vicodin four times a day as needed for two weeks.

Nitz states that when an inmate is ordered to receive medication four times a day, the medication is dispensed at four specific times: 8:00 a.m., noon, 6:00 p.m., and 8:30 p.m., unless the doctor specifies that it is to be dispensed at other times. Plaintiff disputes this. He slightly disagrees with the specific times, which he calls "pill call" times—he states that they are 8:00 a.m., 1:00 p.m., 6:00 p.m., and 8:00 p.m. He also disputes that nurses are required to dispense these medications only at these times, and states that there were several times during the treatment of his wrist that he received Vicodin at times other than the four "pill call" times. The "DEA Controlled Substance Perpetual Inventory HSU Medication Room" chart submitted by plaintiff supports his statement. *See* Dkt. 31-12. It shows that plaintiff received Vicodin at non-pill-call times several times in late May and early June 2011.

Nitz saw plaintiff again at 11:30 p.m. He was sitting in his room and denied having any pain. She provided him an ice bag and advised that he should press his call button if he had any concerns.

Plaintiff pushed his call button around 2:00 a.m. The parties dispute aspects of what plaintiff told Nitz at this time. Plaintiff states that he was experiencing pain of about 7 on a 1-10 scale, that he was grimacing because of the pain, and that his fingers were "barely numb with slight tingling." Nitz states that plaintiff reported pain of 6-7 on the scale, that he did not appear to be experiencing extreme pain, was not grimacing, and that his fingers were "still

3

numb and tingling." It is undisputed that Nitz would not give plaintiff Vicodin because it was not a designated "pill call" time. Nitz told plaintiff to use his ice bag and elevate his arm.

Nitz saw plaintiff again sometime between 2:30 and 3:00 a.m. Nitz says that plaintiff did not appear to be in distress. Plaintiff states that he was grimacing and that he told Nitz that his pain was now fluctuating between 8 and 10 on the scale, that his fingers were no longer numb, and that his arm felt like it was in a vice. Nitz again told plaintiff that she could not give plaintiff Vicodin. She instead gave him gave him 200 milligrams of ibuprofen. She filled his ice bag and again told him to elevate his arm.

Nitz next saw plaintiff at 5:00 a.m. Plaintiff was still awake. Nitz says that plaintiff said he was in pain, that he "still had numbness and tingling in his fingertips," and that he did not appear to be in distress. Plaintiff states that he had already told Nitz that his hand was no longer numb. He told Nitz that his pain fluctuated between 8 and 10 and that the ibuprofen was not working. He was grimacing and "there was no way to hide how much pain [he] was in." Plaintiff states that Nitz told him that he might get his morning dose of Vicodin at 6 a.m.

Plaintiff was next seen by non-defendant Nurse Anderson, although the parties dispute exactly when this occurred. Nitz states that this visit occurred at 6:30 a.m., which is supported by the progress note for the visit. Dkt. 27-1, at 6-7. But plaintiff states that he received a dose of Vicodin from Anderson at 6:05, which is supported by the controlled substance inventory log. Dkt. 31-12, at 1. (From these facts I can infer that it is possible that Anderson gave plaintiff the medication at 6:05 and then returned at 6:30.) Anderson met with Dr. Hannula, who explicitly added a 2:00 a.m. dose of Vicodin to plaintiff's schedule. It is unclear whether Anderson met with Hannula before or after giving plaintiff his 6:05 dose.

4

Defendant Captain Speckhart was working at SCI during the overnight shift following plaintiff's surgery. In his capacity as a "Supervising Officer 2," Speckhart "had the responsibility for the overall direction and operation of an assigned shift," Dkt. 38, at 2, ¶ 5, although he is not a medical professional. He states that when he was informed by another staff member that an inmate requested to speak with him, his standard practice was to go speak with the inmate as soon as he was able to do so.

Plaintiff states that after he was denied Vicodin by defendant Nitz at about 2:30 or 3:00 a.m., he asked another officer, Sergeant Baughman, to tell Speckhart about Nitz's refusal to give him the medication. But Speckhart never came to talk to plaintiff.

## ANALYSIS

### A. Summary judgment

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

Plaintiff brings claims against defendants for violating his Eighth Amendment rights against cruel and unusual punishment by refusing to provide him with Vicodin from about 2:00 to 6:00 a.m. on June 9, 2011, after he woke up in pain. The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir.1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Defendants first contend that plaintiff fails to show that he had a serious medical need. They state that plaintiff rated his pain as 6 or 7 on a 1-10 scale over the roughly four-hour period that defendants did not provide him with Vicodin. But plaintiff disputes this account, stating that his pain was between an 8 and 10 for most of this time. Allegations of severe pain of the sort one might expect following surgery for a broken bone is sufficient to create a dispute of material fact on this issue. *See Gutierrez*, 111 F.3d at 1371-73.

As for defendants' subjective deliberate indifference, defendant Nitz argues that she did not have the authority to provide plaintiff with Vicodin outside of the four "pill call" times, and she provided plaintiff with treatment that she did have the authority to provide: she monitored him, advised him to elevate his arm, and gave him an ice bag and ibuprofen. Given that Nitz provided at least some treatment for plaintiff's pain, the question at issue is

whether her actions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008).

Nitz justifies her actions in part by stating that "an inmate is not entitled to unqualified access to the medication of his choosing," citing to cases in which prison doctors did not violate the Eighth Amendment by choosing to provide prisoners with non-narcotic pain medication. Dkt. 37, at 2 (citing *Burton v. Downey*, 805 F.3d 776, 785-86 (7th Cir. 2015); *Thomas v. Wahl*, 590 F. App'x 621, 624 (7th Cir. 2014); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012)).[2] But these cases are not directly on point because it is undisputed that Nitz was not the official prescribing plaintiff's medication. The question is whether given Dr. Hannula's prescription, Nitz should have done something more to help plaintiff.

Defendant Nitz asserts, without providing a written policy in support, that she was strictly forbidden from giving plaintiff a dose of Vicodin overnight, as opposed to the normal "pill call" times. But other facts call this assertion into question. Dr. Hannula's prescription stated that plaintiff was to receive the medication "as needed." There were several times that plaintiff received doses at times other than the pill call times. In particular, he received a dose from Nitz's replacement, Nurse Anderson, as soon as the shift changed, at 6:05 a.m. The record is unclear was to whether Anderson provided this dose only after consulting with

---

[2] Defendants point out that in *Holloway*, the defendant nurses were entitled to judgment on the plaintiff's claims that they acted with deliberate indifference in providing him with non-narcotic medication prescribed by the jail doctor. 700 F.3d at 1075-76. But in that case, the court concluded that the plaintiff failed to show that the nurses were aware of his pain that he stated was not alleviated by the weaker medication. *Id*. Here, there are disputed issues of material fact over whether plaintiff was in distress and reported being in extreme pain.

Hannula, but without clarity on this issue I must grant plaintiff the inference that Anderson provided the medication without Hannula's specific approval.

But even if prison policies truly restricted Nitz from giving plaintiff a dose of Vicodin overnight, this does not necessarily resolve the claim. A nurse's deference to doctors' instructions "may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010). It is reasonable to assume that there must be some mechanism to obtain medical treatment for prisoners with medical emergencies when a doctor is not present. The Vicodin was provided to plaintiff to ease his pain following surgery at which he received a nerve block. Taking plaintiff's version of events as true, the nerve block wore off early in the morning, and he was in excruciating pain. I can draw a reasonable inference that this was precisely the scenario for which the Vicodin was prescribed. The question becomes whether Nitz was deliberately indifferent by not taking some further action, such as contacting Hannula or another doctor, to get permission to give plaintiff his prescribed narcotic pain medication. It seems likely that had Nitz called Hannula, she would have gotten permission to give him a dose; Hannula ultimately added a 2:00 a.m. dose after hearing about plaintiff's problems the next morning.

The disputed issues of material fact noted above are likely reason enough to deny defendants' motion for summary judgment on plaintiff's deliberate indifference claim against Nitz. But even if I accepted plaintiff's version of the facts as true, I could not say as a matter of law that defendant Nitz's actions were such a substantial departure from accepted professional judgment that she is liable on plaintiff's deliberate indifference claim. Nitz states

that her decisions were reasonable ones, and plaintiff does not provide countervailing expert testimony.

This is a type of medical claim that the Court of Appeals for the Seventh Circuit has suggested would benefit from recruitment of counsel or appointment of a medical expert. *See, e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015) (litigation is "even more challenging in cases, like Perez's, where complex medical evidence (including expert testimony) is needed to assess the adequacy of the treatment received"); *Garner v. Sumnicht*, 554 F. App'x 500, 501 (7th Cir. 2014) ("Under these circumstances, the district court should have attempted to recruit a lawyer for Garner, who appears to be unable to present a case dependent on medical evidence—yet has enough of a substantive claim that the court cannot dismiss it as obviously deficient.").

Plaintiff filed a motion for the court's assistance in recruiting him counsel, Dkt. 15, before defendants filed their motion for summary judgment. It would have been premature to locate counsel for plaintiff before seeing proposed findings of fact making clear whether there were truly disputed issues of material fact in the case. Now that the parties' summary judgment materials do raise issues regarding the appropriateness of Nitz's response to plaintiff's serious medical need, I will grant plaintiff's motion. The remaining schedule will be stricken and a new schedule set once counsel is located.

Plaintiff also brings a state-law medical malpractice claim against defendant Nitz. This claim was discussed in the court's screening order. Dkt. 5, at 4. Yet defendants do not address this claim in their motion for summary judgment. Even if they had raised an argument about the claim, I would have denied their motion for summary judgment because of the disputed issues of fact and my decision to recruit counsel for plaintiff.

Plaintiff also brings deliberate indifference and negligent supervision claims against defendant Speckhart for failing to take any action after Nitz refused to give plaintiff Vicodin. Although non-medical personnel are often allowed to defer to the opinions of medical staff, I will deny defendants' motion for summary judgment on the deliberate indifference claim against Speckhart. (As with Nitz, defendants do not make an argument concerning plaintiff's negligence claim against Speckhart.) Neither party provides much in the way of admissible evidence explaining what Speckhart said or did in the early morning of June 9, 2011. In his declaration, Speckhart says that he does not remember whether he was even informed of plaintiff's problem. *See* Dkt. 28, at 3, ¶¶ 12-14. Plaintiff states that he asked Sergeant Baughman to speak to Speckhart about Nitz's refusal to provide him Vicodin. Plaintiff submits a declaration (signed by plaintiff), stating what Sergeant Baughman told plaintiff that Speckhart said to Baughman. Plaintiff states that Baughman told him that Speckhart was not going to visit plaintiff but rather go along with whatever the nurse decided. *See* Dkt. 33. Baughman's out-of-court statements are hearsay and are not admissible. However, I can infer from plaintiff's own recollection of events that Speckhart chose not to respond to plaintiff's request for intervention. Because plaintiff's claims against Speckhart may also benefit from further factual development after recruitment of counsel, I will allow them to remain in the case.

B. **Remaining motions**

Plaintiff has filed a motion for an extension of time to disclose his expert witnesses. Dkt. 22. In light of my ruling on plaintiff's motion for recruitment of counsel, that motion will be denied as moot. After counsel is located, plaintiff may request a new deadline for expert disclosures.

10

After defendants filed their summary judgment reply, plaintiff filed two motions regarding discovery. One of the motions is captioned as a motion for "Postponement of Summary Judgment," Dkt. 42, and the other is captioned as a motion for sanctions, Dkt. 46. Plaintiff submitted interrogatories seeking information to support statements he made in two affidavits included in his summary judgment to opposition, about whether prisoners are allowed to move outside their cells after a certain time at night, and whether supervisors are required to log whenever they enter the HSU. Defendants took far longer than 30 days to respond, which counsel justified at least in part by stating that summary judgment briefing had been completed, and thus the discovery would be useful only for trial. *See* Dkt. 45-4. This is an inappropriate response—there is no special discovery response deadline for requests filed after summary judgment briefing—but I will not further postpone a decision on summary judgment or sanction defendants; plaintiff did not bring a timely motion to compel about the issue before the summary judgment motion was fully briefed, nor can I say that the late responses prejudiced plaintiff in light of my decision to recruit counsel for plaintiff.

To the extent that plaintiff's motion for sanctions might be considered as a motion to compel a response to one of his interrogatories, I will grant that motion. Plaintiff asks, "Were any of the two sign in times of the HSU log of 5:15 AM and 5:50 AM on June 9, 2011 by Capt. Speckhart?" Dkt. 45-6, at 3. Defendants objected, stating that the request is vague and would require speculation to answer, but ultimately answered that "HSU on 3rd shift is normally not staffed unless an inmate is assigned there by HSU staff. Rounds are made checking in with SCI nursing staff during the shift." *Id*. I do not agree with counsel's objections, and the answer is non-responsive. Plaintiff asks whether defendant Speckhart entered the HSU during either the 5:15 or 5:50 times that are noted, but redacted, on the

11

HSU sign-in log. *See* Dkt. 31-14. I will compel Speckhart to respond to this straightforward question.

ORDER

IT IS ORDERED that:

1. Defendants Shelley Nitz and Eric Speckhart's motion for summary judgment, Dkt. 23, is DENIED.

2. Plaintiff's motion for assistance in recruiting counsel, Dkt. 15, is GRANTED.

3. Plaintiff's motion for an extension of time to name an expert witness, Dkt. 22, is DENIED as moot.

4. Plaintiff's motion to postpone a ruling on defendants' motion for summary judgment, Dkt. 42, and motion for sanctions, Dkt. 46, are DENIED.

5. Plaintiff's motion to compel discovery, Dkt. 46, is GRANTED. Defendant Speckhart may have until April 5, 2016, to answer plaintiff's interrogatory No. 7.

6. The schedule in this case is STRICKEN and proceedings are STAYED pending recruitment of counsel for plaintiff. If I find counsel willing to represent plaintiff, I will advise the parties of that fact. Soon thereafter, a status conference will be held with to establish a new schedule for resolution of the case.

Entered March 22, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge